**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**SAMUEL M. BATEY, JR.,**

       **Plaintiff,**

**v.**                                   **Civil Action No. 5:07cv12**
                                               **(Judge Stamp)**

**P.A. SWANSON, JANET BUNTS,**
**DR. LANASA, DR. WILLIAMS,**
**UNKNOWN CORRECTIONS OFFICERS,**

       **Defendants.**


## OPINION/REPORT AND RECOMMENDATION

On January 13, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants in the United States District Court for Eastern District of Kentucky. Because the events giving rise to the complaint occurred at the Gilmer Federal Correctional Institution in Glenville, West Virginia, the case was transferred to this Court on January 12, 2007. Upon a preliminary review of the file, the undersigned determined that summary dismissal was not warranted at that time, and the defendants were directed to answer the complaint.

On May 15, 2007, defendant LaNasa filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. On June 28, 2007, defendants Bunts and Williams also filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment. Finally, on September 4, 2007, defendant Swanson filed a Motion to Dismiss or, Alternatively, for Summary Judgment. After each motion was filed, the *pro se* plaintiff was sent a <u>Roseboro</u> Notice in which he was advised of his right to file a response. The plaintiff filed replies on June 18, July 26, and September 24, 2007.

This case is before the undersigned for a report and recommendation pursuant to LR PL P

83.02, et seq.

## I. Factual and Procedural History

## A. The Complaint

In the complaint, the plaintiff asserts that the defendants violated his constitutional rights pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971), by being deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff asserts that he has exhausted his administrative remedies.

In support of his claims, the plaintiff asserts that defendant Swanson misdiagnosed a calf injury by failing to follow basic medical care and training practices. The plaintiff asserts that defendant Swanson observed that the plaintiff's right calf was black and blue, was extremely swollen, and that the plaintiff was in extreme pain. The plaintiff asserts that without ordering x-rays, ultra sounds, or an MRI, Swanson insisted that the plaintiff's injury was nothing more than a strained muscle, prescribed the plaintiff some pain pills, and told him to put some ice on the injury. The plaintiff asserts that he was seen by defendant Swanson multiple times and each time Swanson failed to go beyond a visual examination, completely disregarded the plaintiff's continued complaints of pain, and the obvious swelling in his right calf.

Plaintiff eventually returned to the medical department and was examined by a different physician's assistant ("PA"). The plaintiff asserts the new PA immediately ordered an ultra sound, gave the plaintiff a different type of medication, and a blood thinner. Moreover, the plaintiff asserts that upon receiving the results of the plaintiff's ultra sound, medical staff rushed him to an outside hospital because the ultrasound revealed the presence of a life threatening blood clot.

At the outside hospital, the plaintiff was seen by defendant LaNasa. The plaintiff asserts that

Dr. LaNasa put him on a stronger blood thinner to see if that would resolve the blood clot. When the plaintiff's condition only worsened over the next month, Dr. LaNasa scheduled the plaintiff for immediate surgery. The plaintiff asserts that after going through the necessary pre-surgery procedures, the plaintiff was unable to have the surgery because defendant Bunts failed to inform him that he could not eat after a certain time. As a result, the plaintiff asserts that his surgery was continued for approximately one month,[1] resulting in unnecessary pain and suffering.

During the plaintiff's surgery, the plaintiff asserts that Dr. LaNasa removed a large number of blood clots, about the size of a "fave bean." The plaintiff asserts that the blood clots were large due to the length of delay in receiving adequate medical treatment.

After the surgery, the plaintiff asserts that defendant Williams failed to follow Dr. LaNasa's follow-up instructions. Specifically, the plaintiff asserts that Dr. Williams failed to provide him with antibiotics and certain pain medications. As a result, the plaintiff asserts that the surgical area became infected and that he was then given a posterior shot of antibiotics.

Sometime later, Dr. LaNasa came to visit the plaintiff to check his post-surgical condition and allegedly asked why the plaintiff's stitches had not been removed. The plaintiff asserts that Dr. Williams told Dr. LaNasa that he had ordered them not to remove the stitches. In addition, Dr. LaNasa observed that there was a lot of fluid in the plaintiff's calf and removed more than 60 cc's of fluid. Dr. LaNasa then told Dr. Williams to have the plaintiff's calf drained once a day.

Approximately one week later, the plaintiff asserts that he went to see Dr. Williams because he was experiencing a great deal of pain. The plaintiff asserts that Dr. Williams drained another 60 cc of fluids from the plaintiff's calf area and ordered fluids removed daily. However, the plaintiff

---

[1] Plaintiff's medical records show that his surgery was delayed for only four days.

asserts that his condition only worsened and that he was having up to 100 cc's of fluids removed at a time. Therefore, the plaintiff was seen again by Dr. LaNasa and a second surgery was ordered.

The plaintiff asserts that Dr. LaNasa performed a second surgery on his calf to clean the hematoma because of infection. Upon the plaintiff's return from his second surgery at the outside hospital, he asserts that he was placed in ankle chains by the two escorting corrections officers. As a result, the plaintiff asserts that he was unable to move or walk without assistance. Moreover, the plaintiff asserts that he was still heavily medicated. Therefore, the plaintiff asserts that when he arrived back at FCI-Gilmer, and the corrections officers failed to help him get out of the van, he fell face first, hitting the side of the van, going down on the concrete, and scarring his knees and face. An accident report was prepared by another staff member on December 2, 2004.

After his second surgery and fall out of the van, the plaintiff asserts that defendants Swanson, Bunts, LaNasa and Williams wantonly neglected to provide him with further medical and rehabilitative treatment. The plaintiff asserts that such additional treatment was clearly needed.

On December 6, 2004, the plaintiff was examined by Dr. LaNasa. The plaintiff asserts that his surgical bandages were removed at that time and Dr. LaNasa informed him that the calf would be allowed to heal without packing, just bandages. However, the plaintiff asserts that because of the exposed 3 x 4 inch hole in his leg, Dr. LaNasa told him his injury would require extra medical attention and caution. In addition, the plaintiff asserts that Dr. LaNasa informed him that because of the type of injury and area in which it was present, the plaintiff would experience pulling of the calf muscle and problems with his knee.

After his second surgery, the plaintiff asserts that he experienced severe pain and swelling in his knee area and that he requested a referral to an orthopedic doctor. In addition, the plaintiff

asserts that he needed a knee brace. However, the plaintiff asserts that defendant Bunts told him that he would need to see a medical consultant before he could be referred to an orthopedic doctor or receive a knee brace. The plaintiff did in fact see a medical consultant who recommended that he receive the knee brace and that he wear it daily to allow appropriate redevelopment or strengthening of the plaintiff's knee and calf muscle areas. In addition, the medical consultant must have recommended that the plaintiff see an orthopedic doctor because the plaintiff asserts that he was seen by an orthopedic doctor at a later date. However, the plaintiff asserts that by the time he saw the orthopedic doctor, his injury was beyond rehabilitation and permanent injury had already occurred. The plaintiff attributes the delay in treatment to defendant Bunts.

As relief, the plaintiff seeks:

(1) monetary damages of $500,000 from each known and unknown defendant as punitive damages;

(2) the costs of this action; and

(3) any other relief the plaintiff would be deemed entitled.

## B.   Dr. LaNasa's Motion to Dismiss

In his motion to dismiss, Dr. LaNasa moves the Court to dismiss the plaintiff's complaint with prejudice because it is barred by the applicable statute of limitations and because the plaintiff has failed to comply with the pre-suit requirements of West Virginia Code § 55-7B-1, et seq., the Medical Professional Liability Act (MPLA). In the alternative, Dr. LaNasa moves the court to grant summary judgment in his favor.

In support of his motion, Dr. LaNasa asserts that he is a general surgeon in private practice at Stonewall Jackson Memorial Hospital in West Virginia. Dr. LaNasa is also a consulting physician

for FCI-Gilmer. To the best of his recollection, Dr. LaNasa asserts that he was consulted about the plaintiff's right leg, and it was his medical opinion that the plaintiff suffered from both a hematoma and thrombosis of a blood vessel in the leg. Dr. LaNasa placed the plaintiff on a trial of anticoagulant which failed to resolve the problem. Therefore, plaintiff was scheduled for operative treatment. Although the surgery was originally scheduled for August 16, 2004, it had to be delayed until August 20, 2004, because the plaintiff was not fasting when presented on the 16th. In addition, Dr. LaNasa recalls after the surgery that the plaintiff developed a persistent seroma and/or recurrent hematoma which failed to respond to drainage. However, after repeat debridement, the plaintiff's wound appeared to be healing normally and Dr. LaNasa's last treatment of the plaintiff was on December 6, 2004.

Dr. LaNasa asserts that although the plaintiff states that the doctor was deliberately indifferent to his serious medical needs, the plaintiff fails to clearly describe which actions by Dr. LaNasa were deliberately indifferent. Dr. LaNasa asserts that the plaintiff does not specifically identify any action or procedure that was improperly performed or how the doctor could have better treated him.

**C.** **Defendants Bunts and Williams Motion to Dismiss**

In their motion to dismiss, defendants Bunts and Williams assert that the complaint should be dismissed for the following reasons:

(1) failure to exhaust administrative remedies;

(2) the action is barred by the applicable statute of limitations;

(3) the plaintiff fails to state a claim upon which relief can be granted; and

(4) the defendants are immune from action.

In support of their motion, defendants Bunts and Williams assert that plaintiff began complaining of right calf tenderness on March 19, 2004.[2]  The plaintiff was seen by PA Swanson and prescribed Lasix for swelling.  The plaintiff was also advised to keep his leg elevated.  On March 29, 2005, the plaintiff was seen by Dr. Williams for a mass behind his right knee.  At the time, the plaintiff had a full range of motion and no acute swelling.  The plaintiff was referred for ordering a right knee brace.

On April 14, 2004, the plaintiff saw Dr. Williams for increased pain and swelling in his right leg.  The doctor noted swelling of the right calf with varicosities and diagnosed superficial thrombophlebitis of the right leg.  The plaintiff was prescribed medication and advised to follow-up in one week.  On April 19, 2004, the plaintiff was seen for increased swelling of the ankle and foot.  Although his condition was somewhat improved, Dr. Williams referred the plaintiff for venous Doppler studies.  In addition, the plaintiff was issued a larger pair of compression stockings.  On April 21, 2004, the plaintiff was approved for venous Doppler studies and was scheduled for an ultra sound.

On June 10, 2004, the plaintiff was seen for issuance of a knee brace.  Although the plaintiff was issued a knee brace, he complained that it was the wrong brace.  Dr. Williams advised the plaintiff, that for security reasons, he could not have the brace he wanted as it contained metal parts.

On June 14, 2004, an ultrasound was performed on the plaintiff's leg, the results of which were received on July 2, 2004.  Specifically, the ultrasound showed a 10 cm mass in the plaintiff's right calf, possibly secondary to old healed thrombophlebitis or distended varicose veins.  There was no evidence of deep vein thrombosis in the right or left lower extremities.  At the time the plaintiff's

---

[2] For copies of the plaintiff's medical records, see dckt. 43-3 at 5-45.

ultra sound was received at FCI-Gilmer, Dr. Williams was absent from the institution. Therefore, defendant Bunts contacted a physician at another BOP facility. The consulting physician advised her to contact a local surgeon, which prompted Dr. LaNasa's involvement in the plaintiff's care.

Upon consultation, Dr. LaNasa advised defendant Bunts that the plaintiff should be transferred to the emergency room for possible surgery that day. The plaintiff was transferred to the hospital that day, although he did not undergo surgery. Instead, Dr. LaNasa prescribed the plaintiff medications and noted that if there was no improvement in three weeks, the plaintiff would need an evacuation of the hematoma. The plaintiff followed up with Health Services on July 8, 13 and 26, 2004. Being no improvement, the plaintiff was scheduled for surgery. The plaintiff's surgery was performed on August 20, 2004. Defendant Bunts and Williams assert that the plaintiff did not receive antibiotics immediately after the surgery because there was no order for antibiotics and no infection at that time which would warrant them.

After his surgery, the plaintiff developed fluid build-up as a result of a seroma at the site of the former hematoma. Following needle aspirations to withdraw the fluid, the plaintiff developed a mild skin infection of the leg. The plaintiff was prescribed antibiotics for the infection. Defendants Bunts and Williams assert that the surgical site itself, never became infected.

On December 2, 2004, the plaintiff was returned to the hospital for wound debridement and packing performed by Dr. LaNasa. Sutures were not applied and antibiotics were not ordered because there was no chronic infection found. The only medication ordered was Tylenol, as needed for pain.

Upon his return to the institution, the plaintiff fell getting out of the transport van. As a result, the plaintiff received lacerations to his legs and left knee which required minor first aid. He

was advised to follow-up with Health Services as needed. Although the plaintiff was seen frequently for wound dressing changes to his surgical site, the plaintiff made no subsequent complaints regarding his fall from the van.

According to BOP records, the petitioner has filed only four administrative remedies during his incarceration. All of those complaints involve medical care and were filed during the plaintiff's incarceration at FCI-Ashland.[3] One of those complaints involved proper aftercare for his calf injury. However, that complaint referenced the plaintiff's medical care at FCI-Ashland, not at FCI-Gilmer. In fact, the defendants assert that the plaintiff has not filed any administrative remedies referencing his medical care at FCI-Gilmer. Moreover, the complaint that he did file at FCI-Ashland complaining about the aftercare for his calf injury, was not filed until September 26, 2006, more than a year after his transfer from FCI-Gilmer on June 8, 2005.

**D.    PA Swanson's Motion to Dismiss**

In his motion to dismiss, defendant Swanson argues that at the time the events giving rise to the plaintiff's claims occurred, he was serving as an active duty commissioned officer with the United States Public Health Department. Therefore, defendant Swanson asserts that pursuant to the Public Health Services Act, 42 U.S.C. § 233(a), he is immune from suit under Bivens.

**E.    The Plaintiff's Replies**

In response to Dr. LaNasa's motion, the plaintiff first asserts that West Virginia Code § 55-7B-1, et. seq., (The MPLA), is a state law that is not applicable to a federal constitutional claim filed pursuant to 42 U.S.C. § 1983. Second, the plaintiff argues that his complaint was timely filed pursuant to the applicable statute of limitations because he filed it within two years of discovering

---

[3] The plaintiff was transferred to FCI-Ashland, after the events occurring in this case took place.

the claim. Third, the plaintiff asserts that Dr. LaNasa is not entitled to summary judgment because he has clearly shown that Dr. LaNasa was reckless in treating him, causing his injury to worsen. In addition, the plaintiff asserts that Dr. LaNasa was deliberately indifferent to the plaintiff's needs when the doctor failed to prescribe the plaintiff the appropriate medications and failed to adequately treat the plaintiff's injury, thereby causing infection and the need for additional surgery. The plaintiff also asserts that Dr. LaNasa failed to prescribe the plaintiff needed rehabilitation and a knee brace.[4]

In response to defendant Bunts and Williams' motion to dismiss, the plaintiff seemingly concedes that he has not "properly" exhausted his administrative remedies, but more or less argues that his claims should proceed because he complained about "some of his treatment" and because the United States Supreme Court has found that the failure to exhaust is not a per se violation of the Prison Litigation Reform Act ("PLRA"). Therefore, the plaintiff asserts that he has complied with the requirements of the PLRA and the defendants motion to dismiss should be denied. Second, the plaintiff asserts, without any real argument, that his complaint is timely filed under the applicable statute of limitations. Third, the plaintiff asserts that the defendants are not entitled to qualified immunity or official capacity immunity.

In response to defendant Swanson's motion to dismiss, the plaintiff filed a "Motion to Construe P.A. Swanson (sic) Civil Liabilities Under the Federal Tort Statute Under 28 U.S.C. §

---

[4] In the Court's Order to Answer, the defendants were directed to file an answer to the complaint, and the plaintiff was given permission to file a reply. See dckt. 13. Moreover, the parties were specifically advised that pursuant to Rule 7 of the Federal Rules of Civil Procedure, no other pleadings would be accepted without express order of the Court upon a timely motion duly made. Id. Despite this specific directive, the undersigned notes that on June 27, 2007, Dr. LaNasa filed a response to the defendant's reply without seeking authorization from the Court. Accordingly, Dr. LaNasa's response to the plaintiff's reply (dckt. 37) has not been considered herein.

1346(b) and 2672." In his motion, the plaintiff concedes that pursuant to 42 U.S.C. § 233(a) he is precluded from recovering monetary damages against defendant Swanson under <u>Bivens</u>. Therefore, because of his *pro se* status, the plaintiff seeks the liberal construction of his complaint to include an action under the Federal Tort Claims Act ("FTCA") arising from the alleged actions of defendant Swanson.

On September 27, 2007, the undersigned recognized, that as a *pro se* litigant, it may be appropriate for the Court to construe the plaintiff's claims under the proper authority. However, the undersigned also noted that prior to filing a tort action, the plaintiff must first exhaust his administrative remedies by filing a Claim for Injury, Damage or Death with the Federal Bureau of Prisons ("BOP"). Thus, prior to construing the plaintiff's claim against PA Swanson as one against the United States under the FTCA, the Court directed the plaintiff to file proof that he exhausted such a claim.

On October 18, 2007, the plaintiff filed a response to the Court's Order in which he states that he has not satisfied the exhaustion requirements of the FTCA. Therefore, he requests that PA Swanson be removed from this action.

## II.  <u>Standard of Review</u>

### A.  <u>Motion to Dismiss</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations.  <u>Advanced Health-Care Services, Inc., v. Radford Community Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990).  Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted

under any set of facts that could be proved consistent with the allegations of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## B.   Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. Rule 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id. This means that the "party opposing a properly supported motion for summary judgment may not

rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## III. Analysis

### A. PA Swanson

Unlike claims against state actors under 42 U.S.C. § 1983, constitutional claims against individual federal employees are not statutorily authorized. Instead, those claims were created only through judicial authority. Thus, constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority.

In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court found two instances in which a Bivens action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson, 446 U.S. at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19 (emphasis in original).

Here, Congress has explicitly stated that the exclusive remedy for personal injury resulting from the medical decision of a commissioned officer of the Public Health Service while acting within the scope of his employment is against the United States under the FTCA. See 42 U.S.C. § 233(a) ("The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits

precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including

death, resulting from the performance of medical, surgical, dental or related function, including the

conduct of clinical studies or investigation, by any commissioned officer or employee of the Public

Health Service while acting within the scope of his office or employment, shall be exclusive of any

other civil action or proceeding by reason of the same subject-matter against the officer or employee

(or his estate) whose act or omission gave rise to the claim.") Thus, the plaintiff cannot maintain a

Bivens claim against PA Swanson.

Moreover, the plaintiff's request to construe his claim against PA Swanson as one arising

under the FTCA should be denied.  The plaintiff concedes that he has not appropriately exhausted

such a claim.

**B.   Statute of Limitations**

For purposes of determining the appropriate statute of limitations, claims filed pursuant to

42 U.S.C. § 1983 are analogous to "general personal injury actions."  Wilson v. Garcia, 471 U.S.

261, 279 (1985).  Thus, their timeliness is determined based upon the relevant state limitations

period for personal injury actions.  Because Bivens is the federal equivalent to an action under §

1983, federal courts have consistently extended the state general personal injury statute of

limitations to Bivens cases, as well as § 1983 claims.  See, e.g. Chin v. Bowen, 833 F.2d 21, 23-24

(2d Cir. 1987).  In fact, the Fourth Circuit Court of Appeals has determined that West Virginia's two

year personal injury statute of limitations contained at W.Va. Code § 55-2-12(b) is appropriately

applied in Bivens actions.  See Reinhold v. Evers, 187 F.3d 348, 359, n. 10 (4th Cir. 1999).

W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed
> shall be brought: (a) within two years next after the right to bring the

same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

In this case, the plaintiff's claims against Dr. LaNasa are clearly outside the two-year applicable statute of limitations. Although the plaintiff makes vague claims about "discovering" the claims within two years of the date the complaint was filed, the plaintiff fails to provide any factual support or time dated data in which to support such a claim. Accordingly, the plaintiff's claims against Dr. LaNasa are time-barred.

As to the plaintiff's claims against the unknown corrections officers who escorted him after his second surgery, those claims are also clearly time-barred. The incident occurred on or about December 2, 2004, the date the incident report was written. Thus, any claim arising from the action or inaction of those unknown corrections officers which caused the plaintiff to fall out of the transport van and injury himself, is time-barred by the applicable statute of limitations.

With regard to the plaintiff's claims against defendants Bunts and Williams, it is difficult to discern whether all of the plaintiff's claims fall outside the statute of limitations or just some of those claims because the plaintiff provides few dates for the alleged constitutional violations. Therefore, at best, only those claims which occurred between January 3, 2005 (two years prior to the filing of the complaint) and June 8, 2005 (the date the plaintiff was transferred from FCI-Gilmer), are raised within the appropriate statute of limitations. It appears however, that the majority of the plaintiff's claims occurred prior to, and immediately after, his surgery in 2004. Thus, the majority of the plaintiff's claims against those defendants are time-barred. Those that are not, however, are not

exhausted as discussed more fully below.

## C.   Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001).  A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[5] and is required even when the relief sought is not available.  Booth at 741.  A plaintiff must exhaust his administrative remedies prior to filing a complaint in federal court.  See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Neal v. Goord, 267 F.3d 116, 123 (2d Cir. 2001); Jackson v. District of Columbia, 254 F.3d 262, 268-69 (D.C. Cir. 2001).

The BOP makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results.  See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated.  If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located.  (For inmates confined at FCI-Gilmer, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.)  If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy

---

[5] Id.

Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

A review of the plaintiff's administrative remedies shows that the only administrative remedy the plaintiff initiated with regard to is calf injury is one which deals with the after care he received by the medical staff at FCI-Ashland.[6] The plaintiff has never filed any administrative remedies complaining about the care and treatment he received while at FCI-Gilmer. The plaintiff's argument that he is not required to exhaust his administrative remedies is simply without merit. The Supreme Court has very clearly found that administrative remedies must be exhausted prior to filing suit.

However, even if the plaintiff could show that he had somehow exhausted his administrative remedies merely by "complaining" about them to unknown persons, the plaintiff's claims are without merit.

## D. **Deliberate Indifference**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's

---

[6] For copies of plaintiff's administrative remedies, see dckt. 43-2.

attention.  Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991).  A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference.  Wilson, 501 U.S. at 303.  A finding of deliberate indifference requires more than a showing of negligence.  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent."  Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).  A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health."  See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

### 1. **Dr. LaNasa**

Even accepting the facts as stated by the plaintiff as true, the record clearly shows that the plaintiff received timely and attentive medical care from Dr. LaNasa. Moreover, the plaintiff fails to point to a single act or omission by Dr. LaNasa which was sufficiently harmful to evidence deliberate indifference. Although the plaintiff makes a blanket claim that his medical treatment was inadequate, he does not allege that Dr. LaNasa knew of serious risk of injury or that Dr. LaNasa disregarded such a risk. At best, the plaintiff's claims arise to nothing more than a disagreement between himself and Dr. LaNasa over the plaintiff's diagnosis or course of treatment. This is not sufficient to state a claim under the Eighth Amendment.[7]

### 2. **Defendants Bunts and Williams**

Even accepting the facts as stated by the plaintiff as true, the record clearly shows that the plaintiff received timely and attentive medical care from defendants Bunts and Williams. Moreover, the plaintiff fails to point to a single act or omission by either of these defendants which was sufficiently harmful to evidence deliberate indifference. Although the plaintiff makes a blanket claim that his medical treatment was inadequate, he does not allege that either defendant Bunts or Dr. Williams knew of and disregarded a serious risk of injury to the plaintiff. At best, the plaintiff's claims arise to nothing more than a disagreement between himself and defendants Bunts and Williams over the plaintiff's diagnosis or course of treatment. This is not sufficient to state a claim under the Eighth Amendment.

---

[7] Because the undersigned has found the plaintiff's claims outside the applicable statute of limitations, and to be otherwise without merit, the undersigned finds it unnecessary to address the applicability of the W.Va. Code 55-7B-1, et seq., (the MPLA).

# IV.  Recommendation

For the foregoing reasons, the undersigned makes the following recommendations:

(1) Defendant LaNasa's Motion to Dismiss, or in the Alternative, for Summary Judgment (dckt. 30) be **GRANTED**;

(2) Defendants Bunts and Williams Motion to Dismiss, or Alternatively, for Summary Judgment (dckt. 40) be **GRANTED**;

(3) Defendant Swanson's Motion to Dismiss, or Alternatively, Motion for Summary Judgment (dckt. 50) be **GRANTED**;

(4) the plaintiff's claims against the unknown named officers be **DISMISSED**;

(5) the plaintiff's Motion to Construe PA Swanson's Liabilities Under the Federal Tort Statute (dckt. 54) be **DENIED**; and

(6) that the complaint be **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the

docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 24, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE